JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Action Unlimited Resources, Inc. and Randy LaBar

**(b)** County of Residence of First Listed Plaintiff   New Castle County, DE
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Michael R. Miller, Esq./Sarah M. Ennis, Esq. - Margolis Edelstein 170 S. Independence Mall W., Ste. 400E, Phila. PA 19106 215-922-1100

### DEFENDANTS
Veritiv Operating Company

County of Residence of First Listed Defendant   Fulton County, GA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 2   U.S. Government Defendant
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

PRISONER PETITIONS

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 2201, 28 U.S.C. 2202, 28 U.S.C. 1332

Brief description of cause:
Declaratory judgment as to employer non-compete agreement.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 0.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____   DOCKET NUMBER _____

DATE 7/18/17

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 230 Quigley Boulevard, New Castle, DE 19720 / 19 Dryden Road, New Castle, DE 19720

Address of Defendant: 1000 Abernathy Road, Building 400, Suite 1700, Atlanta, GA 30328

Place of Accident, Incident or Transaction: Pennsylvania
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes☐ No☒

Does this case involve multidistrict litigation possibilities?          Yes☐ No☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐ No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐ No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐ No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐ No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
(Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Michael Miller, counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 7/18/17          Attorney-at-Law          306904
Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 7/18/17          Attorney-at-Law          306904
Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Action Unlimited Resources, Inc. and Randy S. LaBar | : | CIVIL ACTION |
| v. | : | |
| Veritiv Operating Company | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (X)

| | | |
|---|---|---|
| 7/18/2017 | Michael R. Miller, Esquire | Attorney for Plaintiffs |
| **Date** | **Attorney-at-law** | |
| 215-931-5808 | 215-922-1772 | mmiller@margolisedelstein.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ACTION UNLIMITED RESOURCES, INC.**<br>and<br>**RANDY S. LaBAR,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**VERITIV OPERATING COMPANY**<br><br>**Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) | **CIVIL ACTION**<br><br>NO. _____<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, Action Unlimited Resources, Inc. ("Action Unlimited") and Randy S. LaBar ("LaBar") (collectively, "Plaintiffs") by and through their undersigned counsel and for their Complaint against Defendant, Veritiv Operating Company ("Veritiv"), respectfully state as follows:

### Nature of the Action

1. This is an action for (a) a speedy declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and Federal Rule of Civil Procedure 57, for the purpose of determining the legal rights and obligations of the parties; (b) a preliminary and permanent injunctive order pursuant to Federal Rule of Civil Procedure 65(a)(2) precluding Defendant from taking any steps to attempt to enforce the unenforceable provisions of Plaintiff LaBar's post-employment restrictive covenant; and (c) for damages arising from Defendant's (i) breach of contract, and (ii) wrongful interference with Plaintiff's contractual relationships.

## Parties

2. Plaintiff, Action Unlimited Resources is a Delaware corporation with its principal place of business at 230 Quigley Boulevard, New Castle, Delaware 19720.

3. Plaintiff, Randy LaBar is an individual residing at 19 Dryden Road, New Castle, Delaware 19720.

4. Defendant, Veritiv Operating Company is, upon information and belief, a corporation, partnership, sole proprietorship, unincorporated association or other legal entity existing under the laws of the Commonwealth of Pennsylvania with an office address of 2385 Maryland Road, Willow Grove, Pennsylvania 19090.

5. Upon information and belief, Defendant, Veritiv Operating Company maintains its principal place of business at 1000 Abernathy Road, Building 400, Suite 1700, Atlanta, Georgia 30328.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 in that Plaintiffs and Defendants are citizens of separate states. Plaintiffs are citizens of Delaware and Defendant is a citizen of both Pennsylvania and Georgia.

7. Venue is proper in the Eastern District of Pennsylvania pursuant to the Declaratory Judgment Act, which provides that Declaratory Judgment may be sought in "any court of the United States."

8. Additionally, Defendant, Veritiv routinely transacts business in Pennsylvania, and the Employment Agreement in question at ¶20 contains a Pennsylvania governing law clause:

> Governing Law. This Agreement shall be subject to and governed by the laws of the Commonwealth of Pennsylvania or any other court of competent jurisdiction, having a significant relationship to the subject matter of this Agreement.

**Factual Background**

9.  Defendant Veritiv has issued Plaintiff LaBar a notice that it seeks to enforce rights and/or obligations to an "Employment Agreement" dated January 6, 1992 (hereinafter "Agreement") entered into between Plaintiff LaBar and Harrisburg Paper Company, a division of International Paper Company.  A copy of the Employment Agreement is attached as Exhibit A.

10. Plaintiff LaBar began his employment in or around 1980 with Advanced Paper Company, which was acquired by Harrisburg Paper Company sometime in the early 1980's. In the early 1990's, Harrisburg Paper Company was acquired by International Paper Company.

11. After the acquisition of Harrisburg Paper Company by International Paper Company in the early 1990's, LaBar and other employees were given the option of remaining employed after the acquisition and did not have to go through a hiring or "re-hiring" process.

12. LaBar made the decision to remain employed after the acquisition, and was given paperwork to sign and fill out accordingly, including the Agreement.

13. LaBar did not receive any consideration for the Agreement other than his continued employment.

14. Section 7 of the Agreement contains several "Restrictive Covenants," including an agreement that LaBar, for a period of 24 months after his employment ends, will not:

> "directly or indirectly solicit or sell any of Employee's products to any person, company, firm or corporation who is or was a customer of Employee's employment. Employee agrees not to solicit such customers on behalf of himself/herself or any other person, firm, company or corporation,"

> "directly or indirectly solicit or sell any of Employee's products to those persons, companies, firms, or corporations who are or were customers of Employer and for whose accounts Employee was responsible while in the employ of Employer. Employee agrees not to solicit such accounts on behalf of himself/herself or any other person, firm, company, or corporation."

"directly or indirectly, within a radius of 150 miles from the Hbg/Delaware Valley Branch represent, sell or offer for sale any items of the same or a similar nature to Employer's products, or an item directly competitive therewith, to any of Employer's customers or those customers the Employer is then soliciting."

"The Employee further agrees not to accept employment by a competitor engaged in the sale of such products within a radius of 150 miles of the Hbg/Delaware Valley Branch for a period of twenty-four (24) months after the termination, for any reason, with or without cause, of the employment relationship, for the purpose of representing, selling or offering such products for sale to Employer's customers or those customers which Employer is then soliciting."

15. Section 12 of the Agreement contains a "Assignment" clause, thus:

"Assignment. Neither party shall have the right to assign any rights or obligations under this Agreement without the prior written approval of the other party. However, this Agreement shall extend to and inure to the benefit of any assignee of Harrisburg Paper Company, that is a division of International Paper Company, or at the time of termination of this Agreement."

16. As set forth herein, a dispute has arisen between the parties as to their respective rights and obligations under the restrictive covenants contained in the Agreement.

17. Defendant Veritiv distributes and markets commercial printing and business imaging papers, facility supplies and equipment, and packaging materials and equipment to businesses in the United States and internationally.

18. Plaintiff LaBar was employed with Veritiv or its predecessor, International Paper Company, for approximately 37 years, beginning on or around 1980, as a commissioned sales representative until June 2017, when he was involuntarily terminated due to poor sales performance.

19. LaBar did not sign any other employment agreements other than the Agreement attached hereto as Exhibit A during his employment with Veritiv and/or its predecessor(s).

20. LaBar never provided written approval for Veritiv or its predecessor(s) to assign any rights or obligations under the Agreement.

21. At the time of his termination, Veritiv immediately confiscated LaBar's company provided laptop computer, from which he performed all of his work. This laptop contained any and all Veritiv property, files, documents, emails, spreadsheets, etc. in the possession of LaBar.

22. At the time of LaBar's termination, his then-supervisor Thomas Dougherty, suggested to LaBar that he look into working with Action Unlimited Resources as a potential new employer. LaBar asked Dougherty if he was able to do so in light of the Agreement, and Dougherty stated "we can't stop you from making a living" or a similar statement.

23. Approximately one month after his termination, LaBar was offered a sales position with Plaintiff Action Unlimited Resources.

24. Action Unlimited is in the business of providing janitorial supplies and cleaning equipment, including offering services such as facility maintenance, and supplying safety supplies, cleaning supplies, and sanitary paper products. Action Unlimited services the Delaware Valley and Southern New Jersey areas.

25. LaBar began employment with Action Unlimited on June 19, 2017.

26. Thereafter, on or about June 26, 2017, LaBar received a "cease and desist" letter dated June 22, 2017, regarding his new employment with Action Unlimited.  A copy of the letter to LaBar is attached hereto as Exhibit B.

27. The cease and desist letter states that Veritiv has been made aware that LaBar is employed by a competitor and to "remind" LaBar of his "continuing obligations" to Veritiv under the Agreement. This letter additionally alleges that LaBar "may be violating" the Agreement: "including, but not limited to your obligation not to solicit any of the Company's customers, such as Johnson Controls."

28. As such, there is an actual case and controversy as to whether the Employment Agreement contains valid restrictive covenants as to Plaintiff LaBar.

## COUNT I
## DECLARATORY RELEIF
## (UNENFORCEABILITY OF RESTRICTIVE COVENANTS)

29. Plaintiffs incorporate by reference herein the allegations contained in paragraphs 1 through 26 as if fully set forth herein.

30. An actual controversy has arisen between Plaintiffs and Defendant.

31. Defendant maintains that Plaintiff LaBar is bound by the non-competition restrictions set forth in paragraph 7 of the Employment Agreement for a period of twenty-four (24) months following the termination of his employment.

32. The non-competition restrictions at issue are not enforceable, because *inter alia*, the Agreement was entered into between LaBar and his then-employer, Harrisburg Paper Company, a division of International Paper Company, and LaBar never provided written approval for Harrisburg Paper Company and/or International Paper Company to assign its rights or obligations under the Agreement to Veritiv, or any other entity, in contravention of the Agreement Section 12.

WHEREFORE, Plaintiff Randy LaBar respectfully requests that this Court enter a declaratory judgment in his favor and against Defendant finding that: (a) Plaintiff LaBar is not bound or restricted by the terms of the Agreement in its entirety, including Section 7; (b) the Agreement in its entirety, including Section 7 is unenforceable; (c) LaBar may immediately continue and/or commence employment as a sales representative for paper supply companies in Delaware and elsewhere without any restriction or liability to Defendant; and (d) such other relief as the Court deems just and equitable.

**COUNT II**
**INJUNCTIVE RELIEF**
**(PRECLUDING ENFORCEMENT OF RESTRICTIVE COVENANTS)**

33. Plaintiffs incorporate by reference herein the allegations contained in paragraphs 1 through 30 as if fully set forth herein.

34. Plaintiffs have a clear right to injunctive relief enjoining Defendant from enforcing or attempting to enforce a non-competition provision against Plaintiff LaBar.

35. Plaintiff LaBar has a clear right to accept employment with Plaintiff Action Unlimited free from the restrictions set forth in the Agreement, including Section 7.

36. Plaintiff LaBar will be immediately and irreparably harmed (a) if he is deprived the right to be employed in his trade and unnecessarily and inappropriately deprived of his livelihood and ability to earn income in his trade; (b) by the loss of employment opportunities; (c) and by the damage that will be done to his reputation by his absence from his trade.

37. Plaintiff Action Unlimited will be immediately and irreparably harmed if it is deprived the right of employing LaBar as a sales representative by the loss of his many years of experience, customer contacts and relationships, and in the time and resources spent recruiting and hiring a replacement sales representative.

38. Plaintiffs will suffer a greater injury if injunctive relief is denied than Defendant will suffer if injunctive relief is granted, most particularly because Defendant is seeking to enforce an invalid and unenforceable Agreement.

39. Enjoining Defendant is in the public interest.

WHEREFORE, Plaintiffs respectfully request that this Court enter a preliminary and permanent injunctive order in their favor and against Defendant Veritiv as follows: (a) enjoining Defendant Veritiv from enforcing or attempting to enforce a non-competition agreement against

Plaintiff LaBar; (b) enjoining Defendant Veritiv from interfering or attempting to interfere with Plaintiff LaBar's employment as a sales representative for Plaintiff Action Unlimited or in any other manner with any other similar employer or company; and (c) such other relief as the Court deems just and equitable.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS/CONTRACTUAL RELATIONS

40. Plaintiffs incorporate by reference herein the allegations contained in paragraphs 1 through 37 as if fully set forth herein.

41. Plaintiffs have, and have had, an existing and/or prospective business and/or contractual relationship with each other for employment.

42. Defendant has, and has had, actual knowledge of Plaintiffs' existing and/or prospective business and/or contractual relations with each other.

43. Defendant's actions, including without limitation, its refusal to acknowledge the unenforceability of the Agreement, including its restrictive covenants, constitutes a purposeful and intentional interference and harm with Plaintiffs' existing and/or prospective business and/or contractual relationship with each other.

44. Defendant's interference is and was without privilege and/or justification.

45. As a result of the foregoing, Plaintiffs have sustained, and continue to sustain, economic damages arising from lost wages, lost business opportunities, and other economic remuneration.

46. Defendant's acts and omissions have been wanton, willful, outrageous, and borne out of an evil motive or a reckless disregard for the rights of others.

WHEREFORE, Plaintiffs LaBar and Action Unlimited respectfully request that the Court enter judgment in their favor and against Defendant Veritiv as follows: awarding Plaintiffs monetary

damages in an amount to be determined by the evidence of this Court, interest, costs, attorneys' fees, and such other further relief as the Court deems just and equitable.

## COUNT IV
## BREACH OF CONTRACT

47. Plaintiffs incorporate by reference herein the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

48. In the event that the Employment Agreement is considered an enforceable contract between Plaintiff LaBar and Defendant Veritiv, Veritiv has breached the terms of this Agreement.

49. Agreement Section 12 requires written approval prior to either party assigning any rights or obligations under the Agreement.

50. Plaintiff LaBar entered into the Agreement with Harrisburg Paper Company, a division of International Paper Company.

51. Plaintiff LaBar never provided his consent, written or otherwise, for Harrisburg Paper Company and/or International Paper Company, to assign its rights or obligations under the Agreement.

52. Upon information and belief, Veritiv was created in 2014, following the merger of International Paper Company's xpedx business and Unisource Worldwide.

53. Veritiv was created as a stand-alone entity via a Reverse Morris Trust transaction, in which a newly-formed entity holding International Paper's xpedx business, was spun off to the International Paper stockholders and then merged with the Unisource business creating an independent, publicly-traded company, Veritiv.

54. Plaintiff LaBar never entered into any agreement with Veritiv and the only known restrictive covenant ever entered into by LaBar is the 1992 Agreement with International Paper Company, attached as Exhibit A.

55. The Agreement is clearly between LaBar and Harrisburg Paper Company, a division of International Paper Company. Veritiv is not a party to the Agreement. Therefore, per Section 12, Harrisburg Paper Company/International Paper Company, in order to assign any rights or obligations under the Agreement, was obligated to obtain LaBar's written approval.

56. LaBar never provided his written approval for any assignment of rights or obligations under the Agreement.

57. Veritiv's attempt to enforce the Agreement without LaBar's written approval of Harrisburg Paper Company/International Paper Company's assignment of rights constitutes a breach of the Agreement.

58. LaBar has been and continues to be damaged by this breach in his inability to be employed in his trade and earn an income through this trade; by the loss of employment opportunities; and by the damage that will be done to his reputation by his absence from his trade.

WHEREFORE, Plaintiff LaBar respectfully requests that the Court enter judgment in his favor and against Defendant Veritiv as follows: awarding Plaintiff monetary damages in an amount to be determined by the evidence of this Court, interest, costs, attorneys' fees, and such other further relief as the Court deems just and equitable.

Respectfully submitted,

MARGOLIS EDELSTEIN

By: _____
Michael R. Miller, Esquire
I.D. No. 306904
170 S. Independence Mall West
The Curtis Center, Suite 400E
Philadelphia, PA 19106
mmiller@margolisedelstein.com

MARGOLIS EDELSTEIN

By:    */s/ Sarah M. Ennis, Esquire*
Sarah M. Ennis, Esquire
I.D. No. 315484
300 Delaware Ave., Suite 800
Wilmington, DE 19801
(302) 888-1112 – telephone
(302) 888-1119 – facsimile
sennis@margolisedelstein.com


*Attorneys for Plaintiffs,*
*Action Unlimited Resources, Inc. and*
*Randy S. LaBar*

Date:  July 18, 2017

# EXHIBIT "A"

## EMPLOYMENT AGREEMENT

This Agreement, entered into this ___6th___ day of ___January___, 19 _92_, by and between ___Randy S. LaBar___ and Harrisburg Paper Company, a division of International Paper Company.

In consideration of the mutual promises and covenants contained in this Agreement and for other good and valuable consideration, including but not limited to, the Harrisburg Paper Company Plan effective January 1, 1992, which is described more particularly in Paragraph 3 of this Agreement, and the employment of Employee by the Employer and the training the Employee will receive from the Employer in the methods and operation of Employer's business, at considerable expense to the Employer, the parties hereto agree as follows:

1. Employment and Duties. While employed by Employer, Employee shall use his/her best efforts to sell Employer's products to customers serviced by the Employer's Hbg/Delaware Valley Branch. In addition, Employee shall perform such other duties assigned to him/her from time to time by the Employer and shall devote such time to the Employer's business as Employer deems reasonable. Employee fully and completely understands and accepts his/her obligations under this Agreement.

2. Term. The term of employment shall begin on the date of this Agreement and shall continue unless terminated by either party.

3. Compensation. For all services rendered by Employee under this Agreement, Employee shall be entitled to compensation for his/her services as per schedule attached hereto and made a part hereof by reference thereto. Said compensation schedule may hereafter be changed, from time to time, by the mutual agreement of both parties hereto and in such event the employment of the Employee shall continue under the new compensation schedule and all of the terms and conditions of this Agreement shall remain in full force and effect.

4. Acknowledgements. Employer is in the business of the distribution and sale of (paper and paper products, janitorial supplies and related items). The Employee acknowledges that: (a) the identity and particular needs of the Employer's customers are not generally known in the industry; (b) Employer has a proprietary interest in the identity of its customers and its customer lists; and (c) documents and information regarding Employer's method of distribution, sales, pricing, costs, and the specialized requirements of the Employer's customers are highly confidential and constitute trade secrets.

5. Trade Secrets and Confidential Information. During the term of this ~ment, Employee will have access to and become familiar with various trade ~ and confidential information of Employer, including, but not necessarily to the documents and information referred to in Section 4 above. ~cknowledges that such confidential information and trade secrets are ~hall continue to be owned solely by Employer. During the term of ~yment and for twenty-four (24) months after such employment

1

158/30

terminates, for whatever reason, termination by the Employer, voluntary termination by the Employee, or any other reason, Employee agrees not to use such information for any purpose whatsoever or to divulge such information to any person other than the Employer or persons to whom the Employer has given its consent.

6. Documents. Upon termination of employment, for whatever reason, the Employee shall not remove from Employer's office any of Employer's books, records, documents, customer lists, or any copies of such documents, without the written permission of Employer; nor shall Employee make any copies of such books, records, documents, or customer lists.

7. Restrictive Covenants. Employee agrees that:

(a) for a period of twenty-four (24) months after this Agreement has been terminated, for any reason, with or without cause, Employee will not directly or indirectly solicit or sell any of Employee's products to any person, company, firm or corporation who is or was a customer of Employee's employment. Employee agrees not to solicit such customers on behalf of himself/herself or any other person, firm, company or corporation.

(b) for a period of twenty-four (24) months after this Agreement has been terminated for any reason, with or without cause, Employee will not directly or indirectly solicit or sell any of Employer's products to those persons, companies, firms, or corporations who are or were customers of Employer and for whose accounts Employee was responsible while in the employ of Employer. Employee agrees not to solicit such accounts on behalf of himself/herself or any other person, firm, company, or corporation.

(c) Employee agrees that while he/she is employed by Employer and for twenty-four (24) months after the date of termination, for any reason, with or without cause, he/she shall not, directly or indirectly, within a radius of 150 miles from the Hbg/Delaware ValleyBranch represent, sell or offer for sale any items of the same or a similar nature to Employer's products, or an item directly competitive therewith, to any of Employer's customers or those customers the Employer is then soliciting.

(d) The Employee further agrees not to accept employment by a competitor engaged in the sale of such products within a radius of 150 miles of the Hbg/Delaware Valley Branch for a period of twenty-four (24) months after the termination, for any reason, with or without cause, of the employment relationship, for the purpose of representing, selling or offering such products for sale to Employer's customers or those customers which Employer is then soliciting.

(e) Employee further acknowledges that (1) in the event that his/her employment with Employer terminates for any reason, he/she will be able to earn a livelihood without violating the restrictions of this Agreement and (2) that his/her ability to earn a livelihood without violating such restrictions is a material condition to his/her employment with Employer.

2

(f) The parties have attempted to limit Employee's right to compete only to the extent necessary to protect the Employer from unfair competition. The parties further agree that, if the scope of enforceability of the restrictive covenants in this Agreement is in any way disputed at any time, a court or trier of fact may modify and enforce the covenants to the extent that they believe it reasonable under the circumstances existing at that time.

8. Remedies. Employee acknowledges that (1) compliance with Paragraphs 4 through 7 of this Agreement is necessary to protect the business and goodwill of the Employer; and (2) that a breach of those paragraphs will irreparably and continually damage Employer, for which money damages may not be adequate.

A. Consequently, the Employee agrees that, in the event he/she breaches or threatens to breach any of these covenants, the Employer shall be entitled to both (1) a preliminary or permanent injunction in order to prevent the continuation of such harm; and (2) money damages insofar as they can be determined, and any other damages permitted by applicable law. Nothing in this Agreement, however, shall be construed to prohibit the Employer from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.

B. In addition to any money damages for the period of time during which the Employee violates these covenants, the Employer shall be entitled also to recover the amount of any fees, compensation, or other remuneration earned by the Employee as a result of any such breach.

9. Waiver of Rights. If on one or more instances either party fails to insist that the other party perform any of the terms of this Agreement, such failure shall not be construed as a waiver by such party of any past, present, or future right granted under this Agreement; the obligations of both parties under this Agreement shall continue in full force and effect.

10. Termination of Agreement. This Agreement shall terminate pursuant to Section 2, or upon the mutual agreement of the parties.

11. Survival. The obligations contained in Sections 4 through 7 shall survive the termination of this Agreement. In addition, the termination of this Agreement shall not affect any of the rights or obligations of either party arising prior to or at the time of termination of this Agreement, or which may arise by any event causing the termination of this Agreement.

12. Assignment. Neither party shall have the right to assign any rights or obligations under this Agreement without the prior written approval of the other party. However, this Agreement shall extend to and inure to the benefit of any assignee of Harrisburg Paper Company, that is a division of International Paper Company, or at the time of termination of this Agreement.

13. Severability. If any provision, paragraph, or subparagraph of this Agreement is adjudged by any court to be void or unenforceable in whole or in part, this adjudication shall not affect the validity of the remainder of the Agreement, including any other provision, paragraph, or subparagraph. Each provision, paragraph, and subparagraph of this Agreement is separable from every

3

other provision, paragraph and subparagraph, and constitutes a separate and distinct covenant.

14. **Applicability.** This Agreement shall be binding upon and shall inure to the benefit of the parties and their successors, assigns, executors, administrators and personal representatives.

15. **Notice.** Any notice to be given to Employee shall be sent by registered mail or certified mail to Employee at his/her last known residence address. Any notice to be given to the Employer shall be sent by registered mail or certified mail to the Employer at its offices at: 3982 Paxton Street, P.O. Box 1337, Harrisburg, PA   17105.

Either party may change the address to which notices are to be sent by so notifying the other party in writing as set forth in this Agreement. If mailed as provided in this Agreement, notice shall have been deemed to have been given as of the date of mailing.

16. **Complete Understanding.** This Agreement constitutes the complete understanding between the parties. All prior representations or agreements have been merged into this Agreement.

17. **Attorneys Fees.** If any party to this Agreement breaches any of the terms of this Agreement, then that party shall pay to the non-defaulting party all of the non-defaulting parties' costs and expenses, including attorneys fees, incurred by that party in enforcing the terms of this Agreement, or in defending any action brought as a result of the same.

18. **Modification.** No alteration or modification to any of the provisions of this Agreement shall be valid unless made in writing and signed by both parties.

19. **Headings.** The headings have been inserted for convenience only and are not to be considered when construing the provisions of this Agreement.

20. **Governing Law.** This Agreement shall be subject to and governed by the laws of the Commonwealth of Pennsylvania or any other court of competent jurisdiction, having a significant relationship to the subject matter of this Agreement.                    >

21. **Tolling Period of Restriction.** The period of non-competition as set forth in Paragraph 7 of this Agreement shall not run during the time in which the Employee is in violation of the restrictive covenant.

In the event that the Employer obtains a preliminary injunction or injunction against the Employee, by a court of competent jurisdiction, the non-competition period set forth in Paragraph 7 of this Agreement shall commence at the time said injunction is granted, and not from the termination of employment.

22. **No Defense.** A claim by the Employee against the Employer shall not constitute a defense to the Employer's enforcement of the restrictive covenants of this Agreement.

4

23. **Anti-solicitation.** The Employee agrees, in consideration of the mutual covenants set forth herein, that he/she will agree not to solicit other employees of the Employer to join the Employee (new employer) in a newly formed business, in direct competition with the Employer.

24. **Common Law Duties of the Employee.** In addition to the mutual covenants set forth above, Employee acknowledges post-termination fiduciary and common law duties preventing the disclosure or use of trade secrets communicated to the Employee in the course of his/her employment.

25. Employee is employed at the will of the Employer. Nothing herein shall be construed to be a guarantee or promise of future employment of any duration.

EMPLOYEE

_____
Signature

1-3-92
_____
Date


EMPLOYER

By: _____
Signature

_____
Title


Witness:

_____
Date

5

# EXHIBIT "B"



June 22, 2017

**VIA UPS GROUND DELIVERY**
Mr. Randy LaBar
19 Dryden Road Covertry
New Castle, DE 19720

      **RE:**    **Employment Agreement**

Dear Mr. LaBar:

     As counsel to Veritiv Operating Company and its predecessors Harrisburg Paper Company and xpedx, LLC (the "Company"), it has come to my attention that you are doing work with a competitor of the Company, Action Unlimited Resources, Inc. I am writing to remind you of your continuing obligations to the Company pursuant to your Employment Agreement ("Agreement"), a copy of which is attached hereto.

     In the Agreement, you agreed, among other things, that for a period of twenty four (24) months following the cessation of your employment, you would not directly or indirectly solicit, sell, any of Company's products to (a) any person, company, firm or corporation who is or was a customer; (b) any person, company, firm or corporation for whose account you were responsible during your employment with the Company; or (c) any of the Company's customers or prospective customers within a 150 mile radius from the Company's, Delaware location. In addition, you agreed that you would return all Company property obtained by you during your employment and that you would not divulge or make use of any of the Company's confidential information or trade secrets without the Company's consent.

     I have been made aware that you may be violating your Agreement (including, but not limited to your obligation not to solicit any of the Company's customers, such as Johnson Controls). To the extent you are violating this Agreement, please cease and desist immediately. In addition, within ten (10) days of the date of this letter, please provide me with a written statement acknowledging your continuing obligations to the Company. In your written statement, please confirm that you have no property or information of the Company in any form, including, but not limited to, external drives, emails, reports, spreadsheets, or other hard copy or electronic documents or communications that contain Company information. If you still have any such property or information, please return it to the office in which you worked within the ten day

**Rachel Sankey**
**Counsel**
1000 Abernathy Road
Bldg. 400, Suite 1700
Atlanta, Georgia 30328
Office. (770) 391-8475
Rachel.Sankey@veritivcorp.com

period.  Finally, please know that nothing in this letter waives or alters any rights or remedies that the Company has under the attached agreement or applicable law.

Sincerely,

Rachel Sankey

Enclosure

cc:    Action Unlimited Resources, Inc.
Attn: President
230 Quigley Blvd
New Castle, DE 19720